# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 90-DP-00266-SCT

*JESSIE DERRELL WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/20/90 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS M. FORTNER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE |
| | CHARLENE R. PIERCE |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 5/9/96 |
| MOTION FOR REHEARING FILED: | 6/13/96 |
| MANDATE ISSUED: | 9/26/96 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Jessie Derrell Williams' first trial in April of 1983, resulted from an indictment by the Jackson County grand jury for the crime of capital murder of Karen Ann Pierce, committed while the defendant was engaged in the commission of the crime of kidnaping. Venue was transferred to Lauderdale County for trial purposes in December 1983.

¶2. The identity of Williams as Pierce's killer rests, at least in part, upon the testimony of Thomas Terrell Evans, a co-indictee. Evans stated that after having several consensual sexual acts, Pierce protested Williams' last attempt of sexual intercourse with her. Evans observed Williams tackle Pierce when she attempted to run away. Shortly thereafter, Evans saw Williams standing over Pierce's bloody body with a knife in his bloodstained hand and his foot resting upon Pierce's shoulder. Evans stated that Williams admitted stabbing Pierce in the heart and cutting her throat and Williams related that he was not going to leave the area until he was sure Pierce was dead. Karen Ann Pierce's body was discovered approximately ten days later by a hunter, Ronnie Russell. Pierce's throat had been slashed, she had been strangled and stabbed in the heart. Her vagina and anus had been excised with a small, sharp knife. Williams was found guilty of capital murder and sentenced by the jury to death.

¶3. On direct appeal, this Court affirmed the guilt-finding phase of Williams' bifurcated trial but, on petition for rehearing, reversed the sentence-determining phase and remanded the cause for a new sentencing hearing. See *Williams v. State*, 544 So. 2d 782 (Miss. 1987). The basis for reversal was the district attorney's closing argument concerning parole and appellate review of capital sentences. These flaws are not present in the appeal now at bar.

¶4. Williams now brings this direct appeal from the Circuit Court of George County where he was sentenced to death a second time by a jury following the new sentence-determination hearing ordered by this Court.

¶5. Aggrieved, Williams assails his second death sentence on nine individual grounds, several of which have multiple prongs. Williams argues the following issues:

**I. WHETHER OR NOT TWO OF THE AGGRAVATING CIRCUMSTANCES WERE IMPROPERLY SUBMITTED TO THE JURY.**

**II. WHETHER OR NOT THE TRIAL COURT ERRED IN ADMITTING SOME DETAILS OF WILLIAMS' PRIOR CONVICTION, THEREBY VIOLATING HIS RIGHTS UNDER THE FIFTH AND EIGHTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

**III. WHETHER OR NOT THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE GRUESOME PHOTOGRAPHS OF THE VICTIM'S BODY, THEREBY AROUSING THE PASSION AND PREJUDICE OF THE JURY.**

**IV. WHETHER OR NOT DR. MCGARRY'S EXPERT TESTIMONY CONCERNING THE KNIFE THAT "WOULD BE CAPABLE OF PRODUCING" THE WOUNDS ON KAREN'S BODY WAS PROPERLY ADMITTED.**

**V. WHETHER OR NOT THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-2 WHICH WILLIAMS CLAIMS VIOLATED HIS RIGHTS UNDER MISS. CODE ANN. §§ 99-19-101, 103 & 105, THE UNITED STATES CONSTITUTION, AND THE MISSISSIPPI CONSTITUTION.**

**VI. WHETHER OR NOT THE ALLEGED PROSECUTORIAL MISCONDUCT VIOLATED WILLIAMS' RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.**

**VII. WHETHER OR NOT THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PREVIOUS TRIAL TESTIMONY OF TWO STATE WITNESSES WITHOUT ADEQUATE PROOF OF THE WITNESSES' UNAVAILABILITY, WHICH VIOLATED WILLIAMS' RIGHTS TO CONFRONTATION AND DUE PROCESS.**

**VIII. WHETHER OR NOT THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE TO INTRODUCE INTO EVIDENCE AN INDICTMENT AND COMMITMENT ORDER WHICH INCLUDED A REFERENCE TO A KNIFE.**

**IX. WHETHER OR NOT THE JURY'S VERDICT FAILED TO COMPORT WITH MISS.**

CODE ANN. § 99-19-101 AND § 99-19-103.

¶6. Several of Williams' claims are procedurally barred. A state court is allowed to impose a procedural bar and alternatively address the merits of claim without jeopardizing the procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989). This Court addressed this issue in *Foster v. State* 639 So. 2d 1263 (Miss. 1994), *cert. denied*, ___U.S.___, 115 S. Ct. 1365, 131 L.Ed.2d 221 (1995). Quoting *Sawyers v. Collins*, 986 F. 2d 1493, 1499 (5th Cir. 1993), *Foster* stated:

> Furthermore, where a state court finds that a federal claim is procedurally barred, but goes on to reach the merits of that claim in the alternative, the state court's reliance on the procedural default still constitutes an independent and adequate state ground which bars federal habeas review.

*Foster,* 639 So. 2d at 1271. The *Foster* Court further quoted from *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985), stating:

> The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case . . . . If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision . . . . An examination of the decision below reveals that it contains no clear or express indication that "separate, adequate, and independent" state-law grounds were the basis for the court's judgment . . . .

*Foster,* 639 So. 2d at 1271(quoting *Caldwell*, 472 U.S. at 327). *See also, Chase v. State* 645 So. 2d 829 (Miss. 1994), *cert. denied* U.S._,115 S.Ct. 2279, 132 L.Ed. 2d (1995).

¶7. The issues not properly raised or preserved in the record are procedurally barred. Notwithstanding the procedural bar, alternatively and independently this Court has considered and addressed these issues and found them to be without merit. A thorough examination of all other issues properly raised by Williams indicate there is no merit to his contentions. This Court affirms Williams' sentence of death.

## STATEMENT OF FACTS

¶8. The State's case in chief commenced with the testimony of L. H. Fountain which focused upon the unavailability of witnesses Ronnie Russell and Gregory Lynn Fountain who had previously testified in Williams' original 1983 trial. Russell's and Fountain's prior testimony was read to the jury.

¶9. Ronnie Russell, twenty-seven years of age, testified, via his former testimony, that he found the body of Karen Pierce while he and his wife were hunting in a wooded area of Jackson County.

¶10. Gregory Lynn Fountain, twenty-three years of age, testified, via his former testimony, that he took Karen Pierce to dinner the night of January 11, 1983, and left her at the Scoreboard Lounge at approximately 11:00 or 11:30 p.m. after she declined to leave with him.

¶11. Don Stewart testified he was an investigator with the Jackson County Sheriff's Office and was responsible for evidence collection and photography. He also testified the Scoreboard Lounge was a bar for rowdy people and a "pretty rough" place noted for its "barroom brawls."

¶12. James Tyson, Jr., a Jackson County deputy sheriff, testified he recovered the victim's purse and tennis shoes from the Scoreboard Lounge.

¶13. Thomas Terrell Evans, a thirty-one year-old co-defendant who entered a plea of guilty to accessory-after-the-fact and received a sentence of five years, described again the events that took place at the Scoreboard Lounge. He also testified about subsequent events at the Old Plantation Home and later in the wooded area of Jackson County where the killing took place. Evans said that he and Pierce initially left the lounge together, with Evans making plans for Williams and Mike Norwood to meet them nearby at the Old Plantation Home. Evans said that they all intended to have sexual intercourse with Karen Pierce and that Norwood and Williams, in fact, did have sexual intercourse with Pierce. The group made several stops for beer and other activities before proceeding to the wooded area in Jackson County where Karen was murdered.

¶14. Evans testified that when they left the Old Plantation and traveled to the wooded area, the four of them continued drinking beer and "smoking dope" until daybreak. Norwood and Williams each had sexual intercourse twice with Karen Pierce. Evans' testimony is that he witnessed the debauchery throughout the entire night, and that around dawn, he observed that Williams grabbed Pierce around the waist and "tackled" her after she attempted to run away from the truck. Evans then watched Williams take Pierce into the burned out underbrush. It did not appear to Evans that Pierce was walking under her own power; rather, Williams had his arm around Pierce's waist while her arm was draped over his shoulders. Her bodily movement was inconsistent with the way people normally walk.

¶15. Evans later observed Williams standing "over the top of the girl with his foot on her back." According to Evans, Williams "switched hands with his knife and pulled her head up [by her hair] and I could see where, you know, she had a incision across her throat there." Williams was smiling at the time.

¶16. Williams told Evans that when he stabbed Pierce in the chest she "jumped straight up." Williams also told Evans "that he wasn't going to leave until he was sure that she was dead." After Williams was positive Karen was dead, Evans testified that the three of them went to eat breakfast and have coffee. Williams stated that he threw away his bloody shirt and other "junk that [he] thought belonged to Miss Pierce" in a dumpster.

¶17. Michael Norwood, an accessory-after-the-fact to the murder, testified that several days after the incident Williams told him he had cut Pierce's throat. He claimed that Williams made a joke out of it.

¶18. Dr. Paul McGarry testified that he performed an autopsy on the body of Karen Pierce on January 25, 1983. He identified thirteen color photographs of Pierce and described in considerable detail the nature and extent of Pierce's horrible injuries.

¶19. Nine witnesses testified for Williams in mitigation. The gist of the evidence in extenuation and mitigation was that Williams could not have inflicted the wounds upon Pierce all by himself; rather, he had to have some assistance from Evans and Norwood.

¶20. Jennie Cummings testified that she was present at the Scoreboard Lounge the evening of the homicide and that she observed Pierce in the company of Thomas Terrell Evans.

¶21. Kenneth McMillon, a deputy sheriff in 1983, testified he was one of the investigators in the case and that charges were filed against people other than Williams, Evans, and Norwood for acts committed at the

Scoreboard Lounge. None of his information revealed that Williams was involved in any crime against Pierce at the Scoreboard Lounge.

¶22. Dr. Claude L. Brown, a psychiatrist in Mobile, Alabama, testified that he examined Williams prior to trial in 1983 and that he was present in the courtroom during trial and heard the testimony of the witnesses. Dr. Brown testified he felt Williams at the time " . . . was not operating with a full, detached, rational degree of control due to factors of his personality and of the situation." Dr. Brown had never assigned any specific psychiatric diagnosis to Williams, but the defendant was not psychotic or crazy. Dr. Brown maintained that Williams had an identity crisis. He characterized Williams as "an individual who is strongly subject to the influence of other individuals in that the atmosphere, if you will, of that night down in Gautier in January 1983, the atmosphere in that lounge and the atmosphere that these three men created amongst themselves, was one that impaired his already to some extent deficient attitudes about himself and his rational control."

¶23. Anna Ezell, head of toxicology at the Mississippi State Crime Laboratory, testified that she found "trace amounts"of methaqualone (Quaalude) and phencyclidine (PCP) in autopsy samples taken from the body of Karen Pierce. The levels were so low they were not reported as being confirmed. Ezell stated that Pierce's blood alcohol level was .07 percent and that legal intoxication is .10 percent. She also confirmed that these samples were taken several days after the body began decomposing and that it would be difficult to draw any firm conclusions from the results.

¶24. James Banks, a sergeant in the maximum security unit at the Mississippi State Prison, testified that Williams had not caused any problems on death row and that he was a quiet person who was usually either sleeping or reading a book.

¶25. Russell White, a unit administrator for death row, testified that Williams had never been written up for any minor or major infractions.

¶26. Judy Swords, the defendant's former wife, married Williams in 1971 and divorced him in 1974. They had one child, a girl, who was eighteen years of age at the time of this hearing. Williams has communicated via letters and the telephone with both Judy and his daughter. In Swords' opinion, Williams was someone worth saving.

¶27. Josephine Hunter, Williams' mother, testified she received one to two letters a week and two telephone calls a month from her son. Hunter stated that she sent Williams a package every thirty days. In her opinion, her son's life was worth saving.

¶28. John Richard, a volunteer chaplain at Parchman, testified that in April of 1988, Williams made a videotape bespeaking the evils of parental disobedience, using drugs and abusing alcohol. Richard stated that from September of 1988 until October of 1989, he had mailed out nearly 104 copies of the Williams' videotape, mostly to youth courts. Richard did not feel that Williams should receive the death penalty. The Williams' videotape was played for the jury following Richard's testimony.

## DISCUSSION OF LAW

### I. WHETHER OR NOT TWO OF THE AGGRAVATING CIRCUMSTANCES WERE IMPROPERLY SUBMITTED TO THE JURY.

¶29. The jury returned a verdict handwritten in the following form:

We, the jury, unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder:

1. That the defendant actually killed Karon Ann Pierce.[1]

Next we, the jury, unanimously find that the aggravating circumstances of:

1. The defendant was previously convicted of a felony involving the threat of violence to the person.

2. The capital offense was committed while the defendant was engaged in the commission of kidnaping.

3. The capital offense was especially heinous, atrocious and cruel.

are sufficient to impose the death penalty & that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find the defendant should suffer death.

¶30. Williams contends that the two aggravating circumstances contained in Miss. Code Ann. § 99-19-101(5)(d)(1972) [number 2 above] and § 99-19-101(5)(h) [number 3 above] were improperly submitted to the jury. Specifically, Williams argues that the 5(d) [number 2] aggravator required a jury instruction setting forth the elements of the underlying offense of kidnaping and that the 5(h) [number 3] aggravator was not properly defined. However, the State argues that Williams did not raise any claim relating to elements of the kidnaping since he did not object to the sentencing instruction S-1 on this ground at the trial and is therefore procedurally barred from raising it at this time. The State is correct. This Court holds that Williams failed to raise this issue and is therefore procedurally barred.

¶31. Procedural bar notwithstanding, alternatively we consider the issue independently on its merits. The pertinent parts of Miss. Code Ann. § 99-19-101(5) (1972)are:

(5) Aggravating circumstances shall be limited to the following:

\*\*\*\*

(b) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.

\*\*\*\*

(d) The capital offense was committed while the defendant was engaged, or was an accomplice, in the commission of or an attempt to commit, any robbery, rape, arson, burglary, kidnaping . . . .

\*\*\*\*

(h) The capital offense was especially heinous, atrocious or cruel.

### A. Miss. Code Ann. § 99-19-101(5)(d): Kidnaping Aggravator

¶32. Williams contends this aggravator was submitted to the jury without any explanation as to the elements of kidnaping and that the State failed to prove beyond a reasonable doubt that the murder occurred during the commission of a kidnaping. Williams thus claims the evidence submitted to the sentencing jury was insufficient as a matter of law to establish the (5)(d) aggravator. Williams argues that the State failed to prove the elements of Miss. Code Ann. §97-3-53 (1972).

### §97-3-53. Kidnaping; capital punishment authorized.

Any person who shall without lawful authority forcibly seize and confine any other person, or who shall inveigle or kidnap any other person with the intent to cause such person to be secretly confined or imprisoned against his or her will . . . .

Williams also argues that the State did not prove beyond a reasonable doubt that he *intended* to confine or imprison the victim against her will.

¶33. However, the first jury in the original case heard sufficient evidence to make this determination. *Williams*, 544 So. 2d at 790. Following a jury trial, Williams had been convicted on December 14, 1983, of capital murder, which is murder while engaged in the commission of the crime of kidnaping. The jury at that time was fully instructed on the statutory elements of kidnaping by instructions S-2 and S-5 in DP-56. Williams' conviction was affirmed by this Court in 1987. When Williams raised the issue on appeal, this Court specifically held that "[t]he record contains certain circumstantial evidence which supports the verdict finding a kidnaping." *Williams*, 544 So.2d at 789. The Court found that:

it is conceivable that a reasonable juror could have found that Karon Pierce was inveigled, i.e., enticed or tricked, with intent to secretly confine her against her will. As kidnaping is not a specific intent crime, it is sufficient that the circumstances resulted in such a manner as to effect a kidnaping as opposed to an actual intent to kidnap, i.e. it is not necessary to establish the mental state of intent by direct evidence.

*Id.* at 790.

¶34. While it would have been the optimum situation to include such an instruction, the jury in the resentence-determining phase did not have to be instructed on the elements of capital murder, murder and kidnaping in this case, in order to make a finding beyond a reasonable doubt of the existence of this aggravating circumstance. Williams is not being charged in the resentencing hearing as he was in his first trial. In *Conner v. State*, the defendant, Conner, claimed that an instruction on a lesser-included offense of simple murder should have been given. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993), *cert. denied*, ___ U.S. ___, 115 S. Ct. 314, 130 L.Ed. 276 (1994). The jury instruction given informed the jury that it could find Conner guilty of capital murder only if it found Conner to be guilty beyond a reasonable doubt of every element of the capital murder charge. *Id.* at 1255. This Court held in *Conner* that this potential error was cured by the jury's verdict which by necessary implication found Conner guilty of the lesser included offense of simple murder. *Id.* In the case at bar, the jury in the guilt phase found Williams guilty of capital murder. The omission of the kidnaping instruction in the resentencing phase was cured by that first jury's conviction of murder and kidnaping, which by necessary implication allowed the resentencing jury to consider whether Williams was guilty of the underlying felony of kidnaping for aggravator purposes.

¶35. In order to find Williams guilty of capital murder, the first jury made the determination that Williams

was guilty of murder while in the commission of kidnaping. This capital murder verdict was not in issue in this resentencing case. The only issue was the manner of punishment that Williams should receive. Mississippi case law states that in an appeal from a resentencing trial for capital murder, the issue of guilt is *res judicata. **Irving v. State***, 441 So. 2d 846, 851-52 (Miss. 1983), *cert. denied.*, 470 U.S. 1059 (1985) *abrogated on other grounds*, **Willie v. State**, 585 So.2d 660 (1991). ***Irving*** held that:

> In that the conviction by the first jury was not disturbed on appeal, the present sentencing jury was prohibited by the doctrine of *res judicata* from relitigating the issue of guilty [sic]. Rather, the second jury's function was to accept the first jury's finding that Irving was guilty of felony-murder involving robbery and then to determine sentence.

*Irving*, 441 So. 2d at 849. The first jury, in 1983, had to find beyond a reasonable doubt that Williams was guilty of murder while engaged in the commission of kidnaping. This jury did not have to "re-find" the elements of murder and/or kidnaping, the underlying offense. This second jury, the George County jury, was to determine the sentence and could rely upon the prior finding made by the Lauderdale County jury during the guilt-finding phase.

¶36. The United States Supreme Court has also approved of the overlap between a finding of guilt in an underlying felony supporting a capital offense, and the reuse of that felony to prove an aggravator in the sentencing phase. **Lowenfield v. Phelps**, 484 U.S. 231, 241-46 (1988). Williams challenged the kidnaping issue, including the actual testimony regarding the kidnaping, the sufficiency of the evidence to support the aggravating circumstance of the kidnaping, and the lack of a kidnaping instruction in the resentencing phase. During Evans' testimony, Evans basically repeated that to which he had testified during the first trial. The jury heard testimony that Pierce requested to go back to the lounge to get her purse and shoes, and that her request was denied. The jury heard that Williams tackled Pierce and took her to the woods. The jury heard that Pierce's legs were not moving consistently with the way someone normally walks.

¶37. Williams argued that Miss. Code Ann. § 99-19-105(3)(b) requires this Court to review whether or not there was sufficient basis to support the aggravating circumstances. In considering the kidnaping aggravator, this Court must decide whether the jury heard enough evidence to make a determination. In addition to Evans' testimony above, the jury knew that Williams had already been convicted of capital murder and the underlying felony of kidnaping. The jury read the S-1 sentencing instruction, which included the procedure for applying the aggravators and the mitigators, complied with the procedure, and found that three of the aggravators applied to this case.

¶38. The trial court did not include an instruction for kidnaping in this resentencing phase, even though one was given in the guilt phase of the trial. No instruction on kidnaping was offered by either the State or Williams. More importantly, Williams did not contemporaneously object at trial or in the motion for a new trial to this lack of a kidnaping instruction. This Court has established a line of cases, including death penalty cases, where the failure to object at trial waives the issue on appeal. **Shell v. State**, 554 So. 2d 887, 893 (Miss. 1989), *rev'd in part on other grounds,* 498 U.S. 1 (1990); **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987), *cert. denied,* 488 U.S. 934 (1988), *post-conviction relief granted on other grounds,* 666 So. 2d 767 (Miss. 1995)(holding that applicability of the contemporaneous objection rule "is not diminished in a capital case"); ***Lockett v. State***, 517 So. 2d 1317, 1033 (Miss. 1987) *cert. denied*, 487 U.S. 1210 (1988)(holding that where there is no indication in the record of such an instruction ever being requested by

the defense, such failure serves as a bar to raising the point on appeal); *See Stringer v. State*, 500 So. 2d 928 (Miss. 1986); *Irving v. State*, 498 So.2d 305 (Miss. 1986), *cert. denied,* 481 U.S. 1042 (1987). Unlike other aggravating circumstances, such as the heinous and cruel aggravator, which until the proper limiting instruction was added had been overturned because it was not constitutionally sufficient, this kidnaping element was proven in the guilt phase of the trial.

¶39. In *Lowenfeld v. Phelps*, 484 U.S. 231, 241- 46 (1988), the Supreme Court reiterated that "to pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" (quoting *Zant v. Stephens,* 462 U.S. 862, 877 (1983)).

> The use of "aggravating circumstances" is not an end in itself, but a means of genuinely narrowing the class of death eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase.

*Lowenfeld*, 484 U.S. at 245. With its "no reason" language, *Lowenfeld* allows a resentencing jury to rely on what was found in the original trial in deciding whether or not an aggravator would apply. In the case at bar, the sentence in the first trial was vacated by this Court due to the mention of appellate review in the closing argument, but the conviction during the guilt phase of the underlying felony of kidnaping was affirmed.

¶40. The United States Supreme Court in *Lowenfeld* concluded:

> [t]he narrowing function required for a regime of capital punishment may be provided in either of these two ways: The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase . . . . Here, the "narrowing function" was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that "the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.

*Lowenfeld*, 484 U.S. at 246.

¶41. In the present case, the jury in the guilt phase returned a conviction for capital murder with the underlying felony of kidnaping. *Irving v. State* clearly holds that the resentencing jury could not relitigate the issue of guilt, "[r]ather the second jury's function was to accept the first jury's finding that Irving was guilty of felony-murder involving robbery and then to determine [the] sentence." *Irving*, 441 So. 2d at 849. Here, the second or resentencing jury accepted the first jury's finding. *Lowenfeld* approved the Texas and Louisiana law which allowed this. Mississippi, like Louisiana, defines various types of murder, with capital murder being the most serious. The provisions of Miss. Code Ann. § 97-3-19, which define capital murder, are similar to the Louisiana Code § 14:30 A first-degree murder definition. Mississippi has in place a "narrowing scheme" like Louisiana and Texas. Thus, in Williams' case, the first jury's finding of guilt with the

capital murder instruction was constitutionally sound because it narrowed the class of persons eligible for the death penalty.

¶42. Williams asserted that a defendant is never collaterally estopped from introducing mitigating evidence. We would agree. However, the distinction here is between introducing mitigating evidence in the penalty phase and thereby attempting to create residual doubt to mitigate and between introducing evidence that challenges the guilty verdict. Williams simply challenges the prior guilty verdict. To allow the prior verdict to be challenged is to recognize that this is really a totally new trial, except that the jury has knowledge that the defendant was previously convicted of capital murder. It also flies in the face of this Court's prior affirmance of Williams' conviction.

¶43. The Supreme Court in *Delo v. Lashley,* 507 U.S. 272 (1993) held that the trial court properly refused to give an instruction in the punishment phase concerning Lashley's alleged lack of significant history of prior criminal activity, and that Lashley was not entitled to punishment phase instruction that he was presumed innocent of other crimes. *Delo*, 507 U.S. at 274. The United States Supreme Court reiterated that the sentencer must be allowed to consider in mitigation " any aspect of a defendant's character or record and any of the circumstances of the offense *that the defendant proffers* as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604(1978)(plurality opinion)(emphasis added). But, the United States Supreme Court has "never suggested that the Constitution requires a state trial court to instruct the jury on mitigating circumstances in the absence of any supporting evidence." *Delo*, 507 U.S. at 275. The Supreme Court said, "nothing in the Constitution obligates state courts to give mitigating circumstance instructions when no evidence is offered to support them." *Id.* at 277.

¶44. In the case at bar the resentencing jury could "reuse" the capital murder conviction to establish the aggravator that the offense was committed while Williams was engaged in the commission of kidnaping. The issue at the resentencing hearing was not the initial elements of the crime, but rather the sentence to be imposed upon a defendant who had been found guilty by a prior jury.

¶45. Williams places great weight on the testimony by Evans on cross at the resentencing trial in which Evans stated that he could not see for sure whether or not Williams dragged Pierce into the woods, or whether her legs were moving to indicate that she was walking. Williams labels this a "drastic change" in testimony. However, Evans had testified on direct that Pierce's legs were moving in such a way that was inconsistent with the way people normally walk. Also, being dragged into the woods is just one among several instances of kidnaping that the prosecution argued at the first trial. The prosecutor argued that several instances of kidnaping occurred: first, when Pierce was taken from the Scoreboard Lounge in the truck; second, when she requested to go get her shoes and was not returned to the Lounge; third, because of her intoxicated condition; and fourth, when she was dragged or carried into the woods from the truck. *Williams*, 544 So. 2d at 790. In other words, the sufficiency of the proof as to the kidnaping has already been decided and is not to be challenged de novo by Williams at a resentencing hearing. Equally problematic for Williams was Evans' testimony that he observed Williams tackle Pierce when she attempted to run away. Such action was more than sufficient for the jury to consider as proof of the underlying felony of kidnaping.

¶46. Even though Williams' own instructions contained the 5(d) felony aggravator, Williams failed at trial to raise a claim concerning the elements of kidnaping and did not offer an instruction embodying those elements. Nor did he request the trial judge grant any such instruction. The cases to which Williams cites

address this point in an original trial as to the guilt-finding phase, not as to the resentencing phase with a different jury. In this posture, Williams argument is procedurally barred. This Court has applied the procedural bar in death penalty cases. **Shell v. State**, 554 So. 2d 887, 893 (Miss. 1989), *rev'd in part on other grounds,* 498 U.S. 1 (1990); **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987), *cert. denied,* 488 U.S. 934 (1988), *post-conviction relief granted on other grounds,* 666 So. 2d 767 (Miss. 1995) (holding that applicability of the contemporaneous objection rule "is not diminished in a capital case"); *Lockett v. State***,** 517 So. 2d 1317, 1033 (Miss. 1987) *cert. denied*, 487 U.S. 1210 (1988)(holding that where there is no indication in the record of such an instruction ever being requested by the defense, such failure serves as a bar to raising the point on appeal); *See, Stringer v. State*, 500 So. 2d 928 (Miss. 1986); *Irving v. State*, 498 So.2d 305 (Miss. 1986), *cert. denied,* 481 U.S. 1042 (1987). This Court holds that Williams is procedurally barred from raising this issue because he did not do so at trial. *See also, Davis v. State*, 660 So. 2d 1228 (Miss. 1995); *Foster v. State,* 639 So. 2d 1263 (Miss. 1994); **Box v. State**, 610 So. 2d 1148 (Miss. 1992).

¶47. Our death penalty scheme is silent with respect to certain resentencing proceedings upon retrial, and this Court has not had the occasion to offer guidance. The case of **State v. Biegenwald**, 524 A.2d 130, 158-61 (N.J. 1987), contains some ground rules applicable in the state of New Jersey. The Supreme Court of New Jersey opined that "[s]ince the retrial is limited to resentencing, the only admissible evidence is that relevant to the issue, namely, evidence of aggravating and mitigating factors. Retrial of issues relevant only to guilt is not permitted." *Biegenwald*, 524 A.2d at 160. That Court found that if both "the State and the defense were free to present new evidence, the new jury may reach conclusions concerning aggravating factors and mitigating factors different from and inconsistent with the findings at the original sentencing proceeding."*Id.* at 161. On appeal, the New Jersey Court further clarified stating that with regard to aggravating factors, other than the use of a defendant's previous murder conviction which is addressed by statute, only in extremely rare cases will the State be allowed to submit evidence of a new aggravating factor, and only on proof that such evidence was unavailable to the State at the time of the original trial. *State v. Biegenwald*, 542 A.2d 442, 453 (N.J. 1988). The defendant may submit any new evidence on mitigating factors previously found and any evidence of any new mitigating factor. The State then has the opportunity to rebut, but cannot present rebuttal evidence in such a way that it becomes a new aggravating factor. *State v. Biegenwald*, 542 A.2d 442, 453 (N.J. 1988). We hold as in Biegenwald, that "retrial is limited to resentencing and the only admissible evidence is that relevant to the issue, namely, evidence of aggravating and mitigating factors. Retrial of issues only to guilt is not permitted." *Biegenwald*, 542 A.2d at 158-61.

### B. Miss. Code Ann. § 99-19-101(5)(h): Heinous Aggravator

¶48. The (5)(h) aggravating factor reads as follows: "The capital offense was especially heinous, atrocious or cruel." Williams contends the trial court submitted the (5)(h) aggravator to the jury without a constitutionally adequate limiting instruction. Williams also contends that the instruction was vague and that the State may not add additional vague definitions in order to define vague terms, since the verdict may have been predicated on the first, constitutionally inadequate definition. The State, on the other hand, argues that sentencing instruction 3 (S-3) is constitutionally adequate and that S-3 was never held to be vague, only constitutionally insufficient.

¶49. This Court addressed this issue in *Conner v. State*, 632 So. 2d 1239, 1270-71 (Miss. 1993), *cert. denied,* ___ U.S. ___, 115 St. Ct. 314, 130 L.Ed.2d 276 (1994), when it held that the jury received an

adequate instruction concerning the 5(h) mitigating factor which reads:

> The Court instructs the jury that in considering whether the Capital offense was especially heinous, atrocious, or cruel, heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and even enjoyment of the suffering of other(s).

> An especially heinous, atrocious, or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of murders--the conscienceless or pitiless crime which is unnecessarily tortuous to the victim. This can be shown by the fact that the defendant utilized a method of killing which caused serious mutilation where there is a dismemberment of the corpse, where the defendant inflicted physical or mental pain before death, where there was mental torture and aggravation before death or where a lingering or tortuous death was suffered by the victim.

*Conner,* 632 So.2d at 1270. The defendant, Conner, claimed, as does Williams, that the limiting instruction was unconstitutionally vague and over broad. *Id.* at 1270. After an analysis of case law prior to this decision, this Court approved this instruction in *Conner*, holding that while the first sentence does not sufficiently narrow the scope of the instruction, the "second and third sentences, however, provide additional specificity and detail sufficient to meet the demands to the Eighth and Fourteenth Amendments to the United States Constitution." *Id.* at 1271. *See Hansen v. State*, 592 So. 2d 114, 150-151 (Miss. 1991), *cert. denied*, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992); *Pickney v. State*, 602 So. 2d 1177, 1179 (Miss. 1992).

¶50. In the case at bar, the (5)(h) aggravator was construed and narrowed by the following language found in S-3:

> The Court instructs the Jury that in considering whether the capital offense was especially heinous, atrocious or cruel, heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.

> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of murders -- the conscienceless or pitiless crime which is unnecessarily torturous to the victim. This can be shown by the fact that the Defendant utilized a method of killing which caused serious mutilation, where the Defendant inflicted physical or mental pain before death, or where there was mental torture and aggravation before death or where a lingering or torturous death was suffered by the victim.

¶51. We find this instruction to be almost identical to the one approved by this Court in *Conner*. The only difference is that the *Conner* instruction inserts the phrase "where there is a dismemberment of the corpse" after "serious mutilation" in the third sentence. *Conner,* 632 So. 2d at 1270. This phrase is not applicable to the Williams case, as testimony from Dr. McGarry showed that the mutilation and excision of the victim's vaginal and anal canal occurred while she was still alive and not yet a corpse. Therefore, this Court holds, as it did in *Conner*, that this assignment of error is without merit.

¶52. Williams' other three complaints addressing the alleged inadequacy of S-3 are: **(1)** the narrowing instruction failed to speak exclusively to his moral culpability; **(2)** the instruction was imperative or mandatory in nature, telling the jury that Williams had in "fact" used a method of killing that caused serious

mutilation; and **(3)** the instruction was unconstitutional because "heinous, atrocious, or cruel" is disjunctive rather than conjunctive. Williams failed to raise these arguments or objections aimed belatedly at instruction S-3 at trial, nor were these points mentioned in Williams' motion for a new trial; rather, they appear for the first time here and are therefore procedurally barred. *See* **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987)(citations omitted) (holding that applicability of the contemporaneous objection rule "is not diminished in a capital case.").

¶53. Williams takes issue with the procedural bar and contends that Mississippi courts cannot avoid deciding a federal claim based on a procedural bar rule he claims is utilized on a "case by case" basis. *See* **Halthorn v. Lovern**, 457 U.S. 255 (1982). In **Foster v. State**, 639 So. 2d 1263, 1270 (Miss. 1994), this Court squarely addressed Williams' claims concerning a state court's application of a procedural bar in a federal claim. **Caldwell v. United States**, 472 U.S. 320 (1985) held that the existence of a state procedural bar does not deprive the United States Supreme Court of jurisdiction. "The state court must have actually relied on the procedural bar as an independent basis of its disposition of the case . . . . If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision." **Caldwell**, 472 U.S. at 327. **Foster** cites to **Caldwell** for the authority that this Court has to consider assignments of error procedurally barred from consideration by this Court. **Foster**, 639 So. 2d at 1271. Therefore, we hold that these arguments are procedurally barred.

¶54. Alternatively, while not waiving this procedural bar, we independently address these issues and find no merit in the other claimed inadequacies of S-3. Williams finds fault with parts of the instruction and certain words in the instruction such as lack of a mens rea requirement, an alleged directed verdict requirement, and the use of the word "or" which he says allows the jurors to find the aggravating circumstances without unanimity. While creative, these contentions have no basis and are without merit. After many challenges to the definition of the 5(h) aggravator and its limiting instructions, this Court's approval of an almost identical instruction in **Conner** again mandates approval of the instruction. **Conner**, 632 So. 2d at 1271. The trial court correctly submitted S-3 to the jury to guide it in its determination of the 5(h) aggravator. There is no merit to this issue.

### II. WHETHER OR NOT THE TRIAL COURT ERRED IN ADMITTING SOME DETAILS OF WILLIAMS' PRIOR CONVICTION, THEREBY VIOLATING HIS RIGHTS UNDER THE FIFTH AND EIGHTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

¶55. Miss. Code Ann. § 99-19-101(5)(b) lists the following as an aggravating circumstance: "The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." Prior to trial, Williams moved in limine to prohibit the State from demonstrating to the sentencing jury that the defendant's prior felony conviction for armed robbery involved the cutting of the victim's throat with a knife. A similar issue focusing upon the admissibility of the prior felony conviction has been raised in Issue VIII. The discussion here should be read in harmony with that discussion.

¶56. The State responded to the defendant's motion in limine as follows:

BY MR. BURDICK: Judge he was convicted in '73 of armed robbery. He used a knife and he cut a man's throat then. [N]ow, as far as the conviction, that's admissible in the aggravating, the sentencing phase. The State would not at this time go into the fact that he cut his throat. But the minute he starts

putting evidence that this was a one-time deal and he's rehabilitated and he's a nice guy, we're going to put it on.

¶57. The subsequent ruling made by the trial judge is quoted as follows:

BY THE COURT: You bear that in mind, Mr. Fortner.

¶58. No evidence suggesting that Williams cut the throat of his victim during the armed robbery was introduced during the sentence-determining hearing. On the other hand, the fact that a knife was exhibited during the robbery and that $120 was taken from the victim's person against his will was conveyed to the jury via a copy of the indictment and commitment order issued in 1973.

¶59. Williams also claims the trial court's ruling "chilled" his right to testify in his own behalf and that he was effectively prevented from taking the witness stand for fear the State would bring out the fact that his prior conviction for armed robbery involved the cutting of the victim's throat with a knife. Williams states that because of this ruling, his Fifth, Eighth and Fourteenth Amendment rights were violated. The State contends that Williams cannot predicate error on the exclusion of Williams' mitigating evidence because he failed to make even a minimal proffer of the substance of his testimony and that in this posture, Williams has not preserved this issue for appellate review.

¶60. This Court has held that:

We are aware that such a ruling may have a "chilling effect on his right to testify." **Hawkins v. State**, 538 So. 2d 1204, 1206 (Miss. 1989). We have not yet decided whether we will follow the federal course and hold that, to preserve the issue for appellate review, the defendant must take the witness stand and be subjected to impeachment by the prior conviction. See **Luce v. United States**, 469 U.S. 38, 105 S. Ct. 460, 83 L.Ed.2d 443 (1984). At the very least, a defendant wishing to present the point on appeal, absent having taken the witness stand himself, must preserve for the record substantial and detailed evidence of the testimony he would have given so that we may gauge its importance to his defense.

**Heidelberg v. State,** 584 So. 2d 393, 395 (Miss. 1991) (quoting **Saucier v. State**, 562 So. 2d 1238, 1245 (Miss. 1990)).

¶61. In *Heidelberg*, this Court rejected the defendant's claim that an erroneous ruling made by the trial judge had a "chilling effect" on his right to testify in that Heidelberg failed to preserve for the record "substantial and detailed evidence of the testimony he would have given." *Heidelberg*, 584 So. 2d at 395 (Miss. 1991). *See* Miss. R. Evid. 103(a)(2) , which reads as follows:

**(a) Effect of Erroneous Ruling**. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

**(2) Offer of Proof.** In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

¶62. Williams argues that *Heidelberg* is not applicable because it deals with the admittance of the conviction, and that it neither addresses details of prior conviction, nor is it a death penalty case. Yet, *Heidelberg* is applicable in the sense that Williams, a prior convicted felon, had to decide whether or not to testify in his own behalf. Insofar as this record reflects, he had nothing of substance to say in mitigation of his sentence. Accordingly, Williams' claim that his right of allocution was "chilled" by the foreknowledge that the prosecution would present evidence tending to demonstrate that his prior felony conviction involved the use or threat of violence to the person is without merit.

¶63. Furthermore, Williams' arguments address impeachment more so than prove aggravators and this conviction was not introduced for impeachment purposes. When the State introduced evidence of the prior armed robbery conviction during the sentencing hearing, Williams made it very clear that he was not challenging the State's right to introduce the prior conviction as an aggravator under Miss. Code Ann. § 99-19-101(5)(b). The State had a statutory right to introduce evidence demonstrating that Williams' prior felony conviction involved either the use or threat of violence to the person. The rules of impeachment found in Miss. R. Evid. 609 concerning the details of the previous conviction are inapplicable here because the State was not seeking to impeach Williams' credibility; rather, it was attempting to prove beyond a reasonable doubt the existence of the (5)(b) aggravator. Miss. Code Ann. § 99-19-101 (Supp. 1993) states that "[i]n the proceeding, evidence may be presented as to any matter that the court deems **relevant to sentence**, and shall include matters **relating to any of the aggravating** or mitigating *circumstances*." (emphasis added).

¶64. As a general rule, "in the sentencing phase of a capital case, a prior conviction 'of another capital offense or of a felony involving the use or threat of violence to the person' is admissible . . . as an aggravating circumstance to be considered by the jury in determining punishment." *Cabello v. State*, 471 So. 2d 332, 347 (Miss. 1985), *cert. denied,* 476 U.S. 1164 (1986), *citing Gray v. State*, 351 So. 2d 1342, 1345 (Miss. 1977), *cert. denied,* 446 U.S. 988 (1980); *See Johnson v. State*, 476 So. 2d 1195, 1208 (Miss. 1985).

¶65. In *Cabello*, the Court was confronted with the issue of the use of a mug shot of the defendant used during the sentencing phase. We found that while "[t]he use of mug shots at trial is generally prohibited on the basis that the evidence of other crimes perpetrated by the accused is not admissible . . . . this principle loses significance in the sentencing phase of a capital case." *Cabello v. State*, 471 So. 2d 332, 347 (Miss. 1985), cert. denied, 476 U.S. 1164 (1986). Likewise, while Williams' prior felony of armed robbery at trial is generally prohibited because such may show the propensity by the accused to commit another similar crime, this principle loses significance in the sentencing phase of a capital case. Knowledge of a past crime is needed in order for the jury to consider whether an aggravating circumstance exists in determining punishment.

¶66. Williams' contention with this general rule is that while a prior offense may be introduced for sentence determining purposes, the prosecution cannot list the *details* of the prior conviction. Williams fears that telling the jury that he once before robbed a man while wielding a knife may lead the jury to believe that he has the propensity to use knives, and thereby link him to the knife used on Karen Ann Pierce. The trial judge entered into evidence duly authenticated copies of an indictment and commitment order reflecting a prior 1973 conviction of armed robbery with a knife. During oral arguments before this Court, Williams argued that the jury should have been provided with a certified copy of the conviction which merely told jurors of the existence of the prior felony involving the use or threat of violence to the person, minus the use

of a knife.

¶67. Williams' argument is not only legally incorrect, it also places trial courts in a catch-22 of sorts, for the following reason: Before the jury can sentence a defendant to capital punishment, the jury must assess whether an aggravating circumstance exists. Miss. Code Ann. § 99-19-101 (Cum. Supp. 1993). If "[t]he defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person," then such can constitute an aggravating factor. Miss. Code Ann. § 99-19-101(5)(b). Moreover the statute authorizes that "[i]n the [sentencing] proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances." Miss. Code Ann. § 99-19-101(1). The evidence offered for this purpose must meet the "beyond a reasonable doubt" standard of proof. In the sentencing phase of capital trials, statutory aggravating circumstances must be unanimously found beyond a reasonable doubt. *White v. State*, 532 So. 2d 1207, 1219 (Miss. 1988).

¶68. Thus, in order for the jury to assess whether an aggravating circumstance exists beyond a reasonable doubt, the jury must know at least some of the details of the prior conviction involving the use or threat of violence to the person. In order for twelve members to unanimously agree that a statutory aggravator under § 99-19-101 exists, they must be able to know about the crime that took place earlier, even if that crime indicates that the defendant has the propensity to commit crimes of violence wielding the same type weapon. Agreeing with Williams' contention further hamstrings a trial court by allowing a criminal defendant to later argue on appeal that the statutory aggravator of a "prior felony involving the use or threat of violence to the person" could not have been found unanimously beyond a reasonable doubt since the jury only looked at a sterile indictment, without reviewing the totality of facts surrounding the earlier felony. Because Williams' reasoning puts a trier in a catch-22, creating an opportunity to put the trial court in error when exercising either option, we decline to limit the trial court to submitting only an indictment which notes that the defendant committed armed robbery previously, and that armed robbery is a crime involving the use or threat of violence to the person.

¶69. This Court has previously addressed an argument similar to Williams' argument in *Nixon v. State*, 533 So. 2d 1078 (Miss. 1987), *cert. denied*, 490 U.S. 1102 (1989). Nixon had previously been convicted of rape, and his previous conviction was being introduced in his capital murder case for sentencing purposes. Nixon's indictment order for the prior rape stated that he "assaulted and ravished" his victim. *Id.* at 1099. Nixon had pled guilty to the indictment. We acknowledged that those words "were not required." *Id*. at 1099. Nevertheless, "[w]hen considering whether Nixon's prior offense was one involving the use or threat of violence the Court should be mindful that it behooves the prosecutor to prove the existence of each aggravating circumstance beyond a reasonable doubt." *Id*. at 1099. Likewise, in Williams' case, we ought to be mindful that the prosecutor still must prove an aggravating circumstance beyond a reasonable doubt, and that he should have enough leeway to do so.

¶70. Once the defendant has been convicted fairly in the guilt phase of a capital trial, the presumption of innocence disappears. *Delo v. Lashley*, 507 U.S. at 278 (1993). The procedural semantics engaged while determining guilt are not played so gingerly when determining sentencing. The purpose of a capital crime sentencing hearing is to determine whether the defendant deserves life, life imprisonment without the possibility of parole, or the death sentence. Common sense dictates that a death sentence is the enhanced step above a life imprisonment sentence. We have held that enhanced punishment relates to the conduct underlying the previous convictions. *Evans v. State*, 422 So.2d 737, 742 (Miss. 1982), *cert. denied,* 461

U.S. 939 (1983). Thus, the jury must be able to know about the conduct underlying the previous conviction in order to assess that an aggravating circumstance exists, and thereby, appropriately return a sentence of death.

¶71. Taking Williams' argument to its logical end can best be found in the case of *Conner v. State*, 632 So. 2d 1239 (Miss. 1993). *Conner* also involved the issue of whether the trial court was in error for introducing prior crimes in the sentencing phase of a capital murder prosecution. In *Conner*, the trial court stated to the jury that "robbery is a crime of violence" when instructing the jury regarding the aggravating circumstance of a previous conviction for an offense involving the use or threat of violence. The robbery previously committed by the defendant Conner involved an attempt to snatch cash from a cash register in a store and the record did not indicate that Conner had a weapon on that occasion. Conner merely reached over the counter in the presence of the store clerk and seized the money from the cash register. Our statute defines the crime of robbery as the act of taking another's personal property "by violence . . . or by putting such person in fear of some immediate injury to his person." Miss. Code Ann. § 97-3-73. If we applied Williams' version of what the trier should have done, then defendants like Conner would not have had the opportunity to tell the jury about the details of their previous conviction, in order for the jury to determine that an aggravating circumstance existed. Under Williams' suggestion, the *Conner* jury would only have been told that the defendant Conner was previously found guilty of committing a robbery and the statute defines robbery as an act involving the use or threat to the person. The jury could not have taken into account the details of the preceding events, and thereby, never have known that Conner did not brandish a weapon in taking the money out of the cash register.

¶72. In Conner's case, having the jury know the extent of his conduct in his previous conviction not only was needed so that they could unanimously determine beyond a reasonable doubt whether an aggravating circumstance existed, but also the jury's knowledge of the underlying details may have helped Conner because some members of the jury might have considered his past robbery as not amounting to an aggravating factor due to his lack of using a weapon. Thus, agreeing with Williams' contention may actually hurt defendants in some instances. Therefore, this Court declines to carve out a special exception for persons in Williams' position by limiting the trial judge to presenting the jury with only a clean, sterile record of the existence of the prior conviction.

¶73. The United States Supreme Court articulated this dilemma best in *Johnson v. Mississippi*, 486 U.S. 578 (1988).

> Contrary to the opinion expressed by the Mississippi Supreme Court, the fact that petitioner served time in prison pursuant to an invalid conviction does not make the conviction itself relevant to the sentencing decision. The possible relevance of the conduct which gave rise to the assault charge is of no significance here because the jury was not presented with any evidence describing the conduct-- the document submitted to the jury proved only the facts of conviction and confinement, nothing more.

*Id.* at 585-86. Even the United States Supreme Court accepts the fact that the jury must be told at least the facts surrounding the previous conviction, and have the conduct described if relevant in sentencing.

¶74. Williams relies on the following cases for support, *Foster v. State*, 508 So. 2d 1111, 1115 (Miss. 1987), and *Gallion v. State*, 469 So. 2d 1247, 1249 (Miss. 1985). While *Foster* and *Gallion* both stand for the general proposition that when impeaching by proof of convictions, details of the crime are inadmissible, Williams' case has nothing to do with impeachment. Evidence of a prior conviction of armed

robbery with a knife was given to the jury not to impeach, but rather to determine whether an aggravating circumstance existed. Again, nothing unnecessary was given to the jury. They were not told that the prior victim had his throat slashed or whether the prior victim's injuries resulted in death. They were only told that the weapon used in the armed robbery was a knife. Without proof of use of a weapon, there was no armed robbery, only simple robbery.

¶75. We find that the trial court committed no error in presenting to the jury the details of Williams' past crime which also involved a knife. Admission of such was not only relevant, it was needed so the jury could assess beyond a reasonable doubt that an aggravating circumstance existed from his conduct in his past criminal activity. We find this issue to be without merit.

### III. WHETHER OR NOT THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE GRUESOME PHOTOGRAPHS OF THE VICTIM'S BODY, THEREBY AROUSING THE PASSION AND PREJUDICE OF THE JURY.

¶76. Relying upon **McNeal v. State**, 551 So. 2d 151 (Miss. 1989), Williams claims the trial court committed reversible error in allowing the State to reintroduce into evidence thirteen 8 x 10 color photographs depicting the injuries to the victim. Two of the photographs were taken at the site where the body was found while the others were taken either during or after the autopsy. The same photographs were admitted into evidence during the guilt-finding phase of the defendant's trial conducted in 1983. On direct appeal, this Court soundly rejected Williams' claim that the trial judge abused his judicial discretion in admitting the same pictures into evidence. *Williams*, 544 So. 2d at 785. As a general rule, the admissibility of photographs into evidence is within the sound discretion of the trial judge. *Chase v. State*, 645 So. 2d 829, 848-49 (1994), *cert. denied*, ___ U.S. ___, 115 So. 115 S.Ct. 2279, 132 L. Ed. 2d 282 (1995); *Hurns v. State*, 616 So. 2d 313, 319 (Miss. 1993). The trial judge's decision will be upheld unless an abuse of discretion is shown. *Chase v. State*, 645 So. 2d at 848-49; *Alexander v. State*, 610 So. 2d 320, 338 (Miss. 1992).

¶77. The photographs were introduced through the testimony of Dr. Paul McGarry, an expert in the field of forensic pathology and the author of an autopsy performed on Karen Pierce. He identified each photograph individually and testified that each one was a fair and accurate representation and depiction of the injuries he observed on the victim. Dr. McGarry described in detail the injuries to Pierce as depicted by the photos and stated varying medical opinions based to some extent on his examination and use of the photos to explain his reasoning to the jury. Dr. McGarry further testified that in his medical opinion, the photographs would aid and assist him in his explanation and would aid the jury in understanding his testimony.

¶78. Dr. McGarry described for the benefit of the jury the bodily trauma inflicted upon the youthful victim. Pierce's throat had been slashed, nearly from ear to ear. She had been strangled and stabbed in the heart; her vagina and her anal canal had been excised from her body with a sharp instrument, and over thirty additional stab wounds, described by Dr. McGarry as experimental cuttings, were observed in and around the genital area. Dr. McGarry's testimony reflected that Pierce was alive and conscious when her throat was slashed, her heart punctured, and her vaginal and anal area excised.

¶79. At least two of the photographs complained about depict dissected body parts which were the victim's larynx and heart. Other pictures depict Pierce's vaginal and anal area which had been excised, while several others portray the stab wound to the chest and heart. Williams argues the photographs "were completely irrelevant to the existence of any aggravating circumstance or entirely cumulative [and] were not 'necessary'

to the State's case."

¶80. Miss. Code Ann. § 99-19-101 (Supp. 1994) states that "[i]n the proceeding, evidence may be presented as to any matter that the court deems **relevant to sentence**, and shall include matters **relating to any of the aggravating** or mitigating **circumstances**." (emphasis added). This is true even if it is necessary for another jury to determine the issue of penalty.

¶81. Miss. Code Ann. § 99-19-101(5)(h) (Supp. 1994) states: "The capital offense was especially heinous, atrocious or cruel." In this case, the (5)(h) aggravator was construed and narrowed by the following language found in jury instruction number 3:

> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of murders -- the conscienceless or pitiless crime which is unnecessarily torturous to the victim. This can be shown by the fact that the Defendant utilized a method of killing which caused serious mutilation, where the Defendant inflicted physical or mental pain before death, or where there was mental torture and aggravation before death or where a lingering or torturous death was suffered by the victim.

¶82. With respect to the admissibility of photographs to help establish the (5)(h) aggravator, this Court stated the following in **Shell v. State,** 554 So. 2d at 902, "[t]he pictures themselves provide graphic proof of the atrocious nature and extent of Mrs. Johnson's injuries, which gave evidentiary value to the aggravating circumstance of acts of an 'heinous, atrocious, and cruel' nature." See also **Mackbee v. State**, 575 So. 2d 16, 32 (Miss. 1990)(emphasis added) ("Although the state should not attempt in every case to enter into evidence photographs of autopsied body parts, or body parts in general, these pictures were essential in this case in piecing together the puzzle of Montgomery's murder.").

¶83. This Court finds that the photographs were relevant and of probative value to assist Dr. McGarry in his explanation to the jury as well as assisting the jury in understanding the nature and extent of the injuries suffered by Pierce. Their "probative value" went to establishing beyond a reasonable doubt the 5(h) aggravator. Put another way, they were essential in piecing together the atrocity and barbarity of the crime. *See* **Noe v. State**, 616 So. 2d 298, 303-04 (Miss. 1993)(discussing the rules governing admissibility of autopsy photographs and photographs in general).

¶84. Admittedly, several of the photographs may be accurately characterized as gruesome and morbid. However, this Court notes that such a characterization is very much attributable to the very nature of the trauma savagely inflicted by Williams upon Pierce. This Court has said many times, however, that "[a] photograph, even if gruesome, grisly, unpleasant, or even inflammatory, may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose." **Noe,** 616 So. 2d at 303.

¶85. The heinous, atrocious, and cruel nature of Williams' offense cannot be accurately described by words alone; rather, a picture is worth a thousand words. The photographs criticized by Williams graphically portray the heinous and atrocious nature, a qualitative analysis, and the extent, a quantitative analysis, of the butchery Pierce received at the hands of Williams. The photographs were of significant probative value in proving the aggravating circumstances. And, unlike the **McNeal** case, no abuse of judicial discretion has been demonstrated here.

¶86. Williams also argues the photographs were not relevant to sentence because the fact of the killing, the nature and extent of the victim's wounds, and the cause of death were admitted and not in dispute. This Court held in **Noe**, 616 So. 2d at 303, that "[w]here . . . photographs have probative value, stipulations such as this are not an impediment to admissibility." Once again, these photographs prove the utter cruelty inflicted upon the victim, Karen Ann Pierce, and are therefore highly relevant to the enumerated aggravating circumstance of Miss. Code Ann. §99-19-101(5)(h). This Court held in *Leatherwood v. State*, 539 So. 2d 1378, 1383 (Miss. 1989), "in clear and unambiguous language that, during sentencing, the State is limited only to presenting evidence 'relevant to one or more of the eight enumerated aggravating circumstances' in Miss. Code Ann. §99-19-101(5)."

### IV. WHETHER OR NOT DR. MCGARRY'S EXPERT TESTIMONY CONCERNING THE KNIFE THAT "WOULD BE CAPABLE OF PRODUCING" THE WOUNDS ON KAREN'S BODY WAS PROPERLY ADMITTED.

¶87. Dr. McGarry testified that State's Exhibit 11, the knife taken from Williams, "would be capable of producing the exact wounds that [he] found on Karen Ann Pierce." Dr. McGarry testified that two other knives, Exhibits 9 and 10, did not create the wounds found in Pierce's chest. The configuration and dimensions of Exhibit 11, on the other hand, "are **exactly the dimensions** of the wound [to her chest and heart.]" (emphasis added).

¶88. Williams, citing **Foster v. State**, 508 So. 2d 1111 (Miss. 1987), claims this testimony was inadmissible because it was in the realm of "possibility" as opposed to "probability." In **Foster** this Court held that testimony that a knife found in the defendant's car "could have" caused the fatal wound to the victim connoted only a possibility which minimized the probative value of the evidence. *Foster*, 508 So. 2d at 1118.

¶89. The case sub judice bears no resemblance to **Foster**. The testimony that the knife, Exhibit 11, because of its configuration and dimensions would be capable of producing the wound to the victim's heart and chest had significant probative value and was admissible. This is especially true where, as here, Dr. McGarry was able to exclude Exhibits 9 and 10 as the instruments that created the stab wound to Pierce's heart and chest. With regard to the wound to the victim's chest and heart, McGarry's testimony was neither misleading to the jury nor lacking in probative value. His testimony was that Exhibit 11 could not be excluded as the source of the chest wound and that Exhibit 11 was consistent with the implement inflicting that wound.

¶90. In the final analysis, there is a difference between the "could have" testimony found in **Foster** and the "would be capable of producing" testimony found in the case at bar. This is especially true where, as here, there was additional testimony from the State's expert concerning his comparison of the configuration and dimensions of exhibit 11 and the configuration, size, and depth of the wound to the victim's chest and heart and where, as here, exhibits 9 and 10 were excluded.

### V. WHETHER OR NOT THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-2 WHICH WILLIAMS CLAIMS VIOLATED HIS RIGHTS UNDER MISS. CODE ANN. §§ 99-19-101, 103 AND 105, THE UNITED STATES CONSTITUTION, AND THE MISSISSIPPI CONSTITUTION.

¶91. Williams claims that sentencing instruction S-2 was flawed in four respects and should not have been

given. First, Williams contends that reasonable hypothetical jurors could, and would, have read this instruction to require unanimity in the finding of mitigating circumstances presented for their consideration. Williams argues that because the instructions use the word "you", including "you the jury" used once, to define the jury it would follow that the jury would assume that they were required to find the mitigating circumstances unanimously. There is no such unanimity requirement for mitigating circumstances in this instruction. Instruction S-2 required a unanimous finding beyond a reasonable doubt of aggravating circumstances. It cannot be reasonably inferred that the silence of instruction S-2 as to finding mitigating circumstances would likely cause the jury to assume that unanimity was also a requirement.

¶92. In **Mills v. Maryland**, 486 U.S. 367 (1988), and **McKoy v. North Carolina**, 494 U.S. 433 (1990), the Supreme Court of the United States held that a unanimity requirement violated the Constitution by preventing the sentencer from considering all mitigating evidence. In *McKoy,* the trial court instructed the jury to answer four questions, one of which was: "Do you unanimously find from the evidence the existence of one or more of the following mitigating circumstances?" *McKoy*, 494 U.S. at 436. Based on the decision in*Mills*, the United States Supreme Court held that the "unanimity requirement violates the Constitution by preventing the sentencer from considering all mitigating evidence." *McKoy*, 494 U.S. at 435. In the case sub judice, it is clear that the use of the word "unanimous" was only used in relation to the jury's finding of aggravating circumstances; nothing in S-2 conveyed a similar message with regard to mitigating circumstances. *See* **State v. Green**, 392 S.E.2d 157, 163 (S.C. 1990) *cert denied,* 498 U.S. 881 (1990) .

¶93. Interestingly enough, Williams offered four sentencing instructions for consideration by the trial court, D-2, D-3, D-3A, and D-4. Each one of these instructions contains the same language as the criticized instruction with respect to the finding of mitigating circumstances. This observation detracts from the validity of Williams' complaint concerning instruction S-2. At trial, Williams did not object to S-2 on this basis and is therefore procedurally barred.

¶94. Alternatively, without waiving the procedural bar, we address the issue on the merits. In **Shell v. State**, 554 So. 2d 887, 905 (Miss. 1989), *rev'd in part on other grounds,* 498 U.S. 1 (1990), the defendant argued "that the jury was never sufficiently informed that there need not be a unanimous finding of mitigating circumstances." This Court responded that this claim was without merit and held: "In the case at bar, the word 'unanimous' or 'unanimously' was not a part of the mitigating circumstances portion of the jury instructions. Instruction C-1 refers to a unanimous jury finding for aggravating circumstances, but there is no corresponding requirement for mitigating circumstances." *Shell*, 554 So.2d at 905.

¶95. It is important to note that the instruction Williams contends is flawed tracks the instructions given in *Willie v. State*, 585 So. 2d 660 (Miss. 1991). In *Willie* the Court found that "the jury was instructed to unanimously find aggravating circumstances, but not mitigating circumstances. The instructions were proper . . . ." *Id.* at 682. Also, in *Hansen v. State*, 592 So. 2d 114, 150 (1991), this Court held that since the mitigating portion of the instruction did not contain the words "unanimous" or "unanimously" as did the aggravating circumstances portion, the instruction contained no error. Williams' criticism is devoid of merit.

¶96. Second, Williams objects now, as he did at trial, that the mitigating circumstance found in Miss. Code Ann. § 99-19-101(6)(c) was without a factual basis and that consideration by the jury of this factor was improper and prejudiced the defendant because it implied that the victim was in some way responsible for her own death. Williams contends that the jury will assume that he offered this mitigating circumstance. The

6(c) mitigator states "[t]he victim was a participant in the defendant's conduct or consented to the act." Miss. Code Ann. §99-19-101(6)(c). This mitigating circumstance, as well as all the others contained in Miss. Code Ann. § 99-19-101(6)(a) through (g), including a "catch-all" mitigator, were submitted in instruction S-2 for the jury's consideration. Additionally, S-2 refers to these mitigators as *examples* to consider after the jury has unanimously determined that one or more of the enumerated aggravators exist. Instruction S-2 does not represent that all the mitigators even apply to these facts. These are just examples that are listed in the statute.

¶97. The particular circumstances of this case deal with both consensual and forced sexual intercourse, consensual and forced movement from one location to another, and the voluntary consumption by the victim of drugs and intoxicants. In his opening argument, defense counsel even alludes to such events that make such an instruction necessary when he says "Karen Pierce didn't drink a little bit; Karen Pierce drank a lot," which could infer that she was somehow responsible for what happened. The State asserts that it is not prohibited from requesting mitigating circumstances in the instructions, but that it is most interested in protecting the record, its convictions and sentences obtained at trial. Inclusion of this mitigating factor, the State says, would forestall any future claim of ineffective assistance of counsel against the defense counsel on this ground, which would endanger the verdict.

¶98. In fact, Williams' situation is such that he has an argument in either case, should the particular instruction have been deleted or left as it was. Williams may have had a more valid complaint had this particular mitigating instruction been omitted from S-2. In the final analysis, the facts of the case are such that this type of instruction was necessary, since consent and force were both elements that the jury must consider. Williams has failed to demonstrate any prejudice to his case.

¶99. Third, Williams claims that the S-2 instruction shifted the burden of proof from the State to the defendant. In **Shell**, 554 So. 2d at 904, that defendant made a similar argument to the one in the case *sub judice* when he assigned as error identical language contained in a similar instruction. This Court opined:

> Secondly, Shell argues that the jury instructions shifted the burden of proof from the prosecution to the defense. The disputed language appears in Instruction C-1 and reads as follows:

> Next, to return the death penalty, you must find that the mitigating circumstances, those which tend to warrant the less severe penalty, life imprisonment - do not outweigh the aggravating circumstances - those which tend to warrant the death penalty.

¶100. This Court rejected Shell's claim, quoting language found in **Gray v. Lucas**, 677 F.2d 1086 (5th Cir. 1982) *cert denied,* 461 U.S. 910 (1983). In *Gray,* the Fifth Circuit considered the Mississippi death penalty statute and proclaimed that "[e]very mandatory element of proof is assigned to the prosecution. Neither the burden of production nor the burden of proof ever shifts to the defendant." *Gray*, 677 F.2d at 1105-06. Contrary to Williams' claim, the third prong of Williams' four pronged complaint concerning the adequacy of S-2 was conclusively answered in **Shell** when this Court recognized *Gray's* holding.

¶101. Williams argues that this particular situation is different from ***Shell*** in that the instructions in ***Shell*** did not inform the jury that they were to consider mitigating circumstances in "determining whether the death penalty should not be imposed" as stated in S-2. However, this language must be taken in context with the rest of the instruction and the instruction read as a whole. This Court has stated that when considering a challenge against a jury instruction, the instructions should be read and considered as a whole. ***Roundtree***

*v. State,* 568 So. 2d 1173, 1177 (Miss. 1990). "[I]nstructions should be read in their entirety to determine if there was error." *Alan Dale Walker v. State,* No. 92-DP-00568-SCT, slip op. at 11 (Miss. Oct. 12, 1995); *Chase v. State*, 645 So. 2d 829, 852 (Miss. 1994); *Anderson v. State*, 381 So. 2d 1019,1024 (Miss. 1980). One of the criteria that jurors must find exists to impose the sentence of death is the presence of one or more of the aggravating circumstances. What the defendant is citing to in S-2 is language instructing jurors to consider the following mitigators after the jury has unanimously determined that one or more of the enumerated aggravators exist. When taken in context, we find that this issue, as in *Shell*, lacks merit.

¶102. Fourth, Williams claims the instruction is flawed because it failed to require the State to prove beyond a reasonable doubt and the jury to find beyond a reasonable doubt that death was the appropriate penalty. Williams cites no viable authority for this interpretation that such an instruction would cause a jury to infer that it did not have to find beyond a reasonable doubt that death is the appropriate penalty. "An assignment of error, unsupported by any authority, 'lacks persuasion' on review." *Johnson v. State*, 626 So. 2d 631, 634 (Miss. 1993); *Smith v. State*, 430 So. 2d 406, 407 (Miss. 1983), *cert. denied,* 498 U.S. 1033 (1991). The Mississippi statutory scheme does not require this finding. Rather, it only requires **(1)** a unanimous finding, beyond a reasonable doubt, of the existence of one or more aggravating circumstances, **(2)** that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and **(3)** a unanimous finding that the defendant should suffer death. See Miss. Code Ann. § 99-19-103.

¶103. Finally, Williams claims that S-2 amounted to a directed verdict on the existence of aggravating circumstances. He says S-2 permitted the jury to return a death sentence without finding the existence of the aggravating circumstances beyond a reasonable doubt. Instruction 2 states, "You must unanimously find, beyond a reasonable doubt that one or more of the preceding aggravating circumstances exists in this case to return the death penalty." The language above clearly required a unanimous finding beyond a reasonable doubt, thus this argument is without merit.

### VI. WHETHER OR NOT THE ALLEGED PROSECUTORIAL MISCONDUCT VIOLATED WILLIAMS' RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

¶104. Williams presents an argument characterized by the State as a "hydra-headed" claim of prosecutorial misconduct. The targets of Williams' multi-faceted complaint are **(1)** alleged "victim impact" statements made by the prosecutor during closing argument when the prosecutor mentioned the victim by name and referred briefly to the feelings of the victim's mother; **(2)** an allegedly impermissible comment concerning appellate review manifested in the form of a statement by the prosecutor that the mother of Karen Pierce allowed the "system" to work; **(3)** the extraction, during voir dire, of pledges or promises from prospective jurors that they would be willing to impose a sentence of death if the facts justified it; **(4)** other prosecutorial comments that Williams contends were intended to inflame and mislead the jury; and **(5)** allegedly impermissible references to facts not in evidence. Williams cites to *Griffin v. State*, 557 So. 2d 542, 552-53 (Miss. 1990), to support his proposition that the cumulative effect of prosecutorial misconduct requires reversal.

¶105. In **Box v. State**, 610 So. 2d 1148, 1154 (Miss. 1992), this Court opined:

> Where a defendant fails to object to a statement by the district attorney during closing argument, a motion for mistrial after the jury has retired to consider its verdict comes too late . . . . Put another

way, a contemporaneous objection to the allegedly prejudicial remarks is required. **Handley v. State**, 574 So. 2d 671 (Miss. 1990)(citation omitted)(emphasis in original).

> The following language found in ***Blackwell v. State***, 44 So.2d 409, 410 ( Miss. 1950) supports this proposition:
>
> It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial. . . . (emphasis in original).
>
> Except where the comment involves a fundamental right (see, e.g., **Livingston v. State**, 525 So. 2d 1300, 1306 (Miss. 1988), this Court has consistently quoted from and followed **Blackwell,** supra. See **Sand v. State**, 467 So. 2d 907, 910 (Miss. 1985); **Woods v. State**, 393 So. 2d 1319, 1325 (Miss. 1981); **Myers v. State**, 353 So. 2d 1364, 1369 (Miss. 1978); **Ratliff v. State,** 313 So. 2d 386, 388 (Miss. 1975); **Barlow v. State**, 272 So. 2d 639, 640 (Miss. 1973); **McGarrh v. State**, 249 Miss. 247, 148 So. 2d 494, 507 (1963).

*Box*, 610 So.2d at 1154. These points were waived in the lower court when the defendant failed to object, and they are deemed forfeited on appeal to this Court.

¶106. Furthermore, heightened appellate scrutiny in death penalty cases does not require abandonment of our contemporaneous objection rule which applies with equal force to death cases. For many years this Court has held that trial errors cannot be raised in this Court for the first time on appeal. See e.g. **Jefferson v. State**, 386 So. 2d 200, 202 (Miss. 1980) (holding that errors not presented in motion for new trial or not raised in trial court could not be raised in this Court for first time on appeal). In **Leverett v. State**, 197 So. 2d 889, 890 (Miss. 1967)(quoting **Collins v. State**, 173 Miss. 179, 180, 159 So. 865, 865 (1935)), the Court held the following:

> The Supreme Court is a court of appeals, it has no original jurisdiction; it can only try questions that have been tried and passed upon by the court from which the appeal is taken. Whatever remedy appellant has is in the trial court, not in this court. This court can only pass on the question after the trial court has done so.

¶107. The underlying basis for the existence of a contemporaneous objection rule is found in **Oates v. State**, 421 So. 2d 1025, 1030 (1982), where this Court opined:

> There are three basic considerations which underlie the rule regarding specific objections. It avoids costly new trial. **Boring v. State**, 253 So. 2d 251 (Miss. 1971). It allows the offering party an opportunity to obviate the objection. **Heard v. State**, 59 Miss. 545 (Miss. 1882). Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. **Boutwell v. State**, 165 Miss. 16, 143 So. 479 (1932). These rules apply with equal force in the instant case; accordingly, we hold that appellant did not properly preserve the question for appellate review.

*See also*, ***Conner v. State***, 632 So. 2d 1239, 1254-55 (Miss. 1993). In death penalty cases, the contemporaneous objection rule is applicable. **See Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987) (holding that applicability of contemporaneous objection rule "is not diminished in a capital case"); **Lockett**

**v. State**, 517 So. 2d 1317, 1333 (Miss. 1987) ("This Court on numerous occasions has refused to consider the issue of prosecutorial misconduct where the defendant did not raise it at trial and we so refuse to do so today."). None of the incidents complained about here involve a fundamental right entitling the defendant to relief in the absence of a contemporaneous objection. None of the incidents are so egregious and inflammatory that the trial court should have taken corrective action on its own motion.

¶108. These claims are all procedurally barred because none of the incidents complained about on appeal were the targets of a contemporaneous, or any other, objection during the trial. Not one objection was made by Williams during the prosecutor's closing argument. None of the incidents complained about now were previously the targets of complaint. Consequently, Williams' belated claims are procedurally barred from consideration on direct appeal. Yet, not waiving the procedural bar, we will alternatively address the alleged errors on the merits.

### 1. Victim Impact Statement

¶109. During closing arguments the prosecution made reference to the victim's family in what could be called a victim impact statement. In recent Mississippi jurisprudence and in the United States Supreme Court victim impact statements are no longer absolutely barred in the penalty phase of a capital trial. ***Payne v. Tennessee***, 501 U.S. 808, 824 (1991); *See **Hansen v. State***, 592 So. 2d 114 (Miss. 1991); ***Jenkins v. State***, 607 So. 2d 1171, 1183 (Miss. 1992). In ***Payne,*** the Court stated that, "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." ***Payne***, 501 U.S. at 827. In light of the ***Payne***, ***Jenkins***, and ***Hansen*** decisions, this argument has no merit.

### 2. Comment on Appellate Review

¶110. The basis for reversal in Williams' previous trial was the district attorney's closing argument concerning appellate review of capital sentences. *See **Williams v. State***, 544 So. 2d 782 (Miss. 1987). Williams contends that a statement made during closing argument in this resentencing phase would again warrant reversal by this Court. Yet, Williams' failure to object to the comment made by the prosecution during closing argument bars him from asserting prejudice in hindsight. *See **Davis v. State***, 660 So. 2d 1228 (Miss. 1995); ***Foster v. State,*** 639 So. 2d 1263 (Miss. 1994); **Box v. State**, 610 So. 2d 1148, 1154 (Miss. 1992); **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987).

¶111. Alternatively, without relaxing the procedural bar, we now address this issue on the merits. While Williams is correct "that the mention of appellate review [is] impermissible," ***Williams***, 544 So. 2d at 800, it is unclear that the remark that Williams complains about is *actually* about appellate review. The comment in the prosecutor's closing argument that Williams is contesting is as follows: "Karen Ann Pierce's mother follows the law . . . . She let the system take over. And the system has been at it for eight years. And the system is still at it. Now do we believe in the system?" Due to the fact there had been a prior determination of guilt and this was a sentencing trial only, the jury was well aware that this case had been around for awhile. The prosecutor said these sentences in the context of commenting on the jury system and whether or not people should still believe that justice will prevail. Nothing was ever said about appellate review or that this case would be subject to such review. The prosecutor was referring to the time at hand, the time just before when the jury would go into deliberations. The comment complained of was nebulous. This issue is without merit.

## 3. Voir Dire Questions

¶112. Williams argues that the State impermissibly exacted from the prospective jurors a promise that they would impose the death penalty if the State proved its case. He identifies four such questions that he perceives as extracting this promise. However, Williams failed to object at that time. "Counsel may not sit idly by making no protest as objectionable evidence is admitted, and then raise the issue for the first time on appeal. If no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case." *Cole v. State*, 525 So. 2d at 369. In *Cole*, the defendant contended that the jury was voir dired in such a way as to force them to commit to voting for the death penalty. The same theory applies to this case. Williams never objected to this form of questioning the potential jurors. Williams' lack of objection to these alleged errors waives the point for appeal. *See Chase v. State*, 645 So. 2d 829, 854 (Miss. 1994) (holding that defendant's lack of objection to comments by prosecutor during voir dire waived this issue on appeal).

¶113. Alternatively, without waiving the procedural bar, we address the proposition on the merits. The prosecutor inquired of the first panel, "Does anyone on this panel, the twelve of y'all have any conscientious scruples against the imposition of the death penalty if the law allows it, which it does, and the facts justify it, which we'll show you?" In his questioning of the second group of jurors, the prosecutor asked,

> But again, this only goes to the sentence which you, as jurors, will impose. Does anyone . . . have any conscientious scruples against the imposition of the death penalty when the law allows it -- and the law does allow it. So what I'm asking, if the facts justify it, can each and every one of ya'll, under those circumstances, vote for the death penalty? Could anyone not vote for the death penalty?

¶114. In his third voir dire, the prosecutor asked, "But the law of Mississippi allows for the imposition of the death penalty if the facts justify it. We submit the facts justify it. I want just to know if y'all are willing to do it under the proper circumstances." On the fourth voir dire the prosecutor inquired,

> Does anyone have any problem with that [voting for the death penalty] if the law allows it and the facts of this case justify it? . . .Be honest with yourself . . . . [e]verybody has a right to believe what they want to . . . . But on the other hand we're entitled to a fair trial. The State can't get a fair trial unless your honest with me.

¶115. Prosecutors are allowed to question jurors as to their feelings about the death penalty and whether the juror can apply the law concerning the death penalty despite the juror's personal feelings. *See Leatherwood v. State*, 435 So.2d 645, 654 (Miss. 1983), *cert. denied,* 465 U.S. 1084 (1984). None of the statements above can be deemed to be extracting a promise that the juror will apply the death penalty. All the questions contain some form of the phrase "if the facts justify it." This contention is without merit, as well as being procedurally barred.

## 4. Other Prosecution Comments Williams Deems Inflammatory

¶116. Prosecution statements with which Williams now takes issue for the first time on appeal are as follows: if the jury "had the guts" to impose the death penalty; "[i]f this man doesn't receive the death penalty in this type of case, then the Legislature ought to take it off the books"; and reference to Williams as an "animal". Williams also accuses the prosecutor of first saying he had gotten the death penalty in prosecutions before, and then later in his argument, claimed to have never asked for the death penalty. However,

Williams raises these issues for the first time on appeal and is procedurally barred. *See Davis v. State*, 660 So. 2d 1228 (Miss. 1995); *Foster v. State,* 639 So. 2d 1263(Miss. 1994); **Box v. State**, 610 So. 2d 1148, 1154 (Miss. 1992); **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987).

¶117. Alternatively, without waiving the procedural bar, we examine the merits of Williams' assertions. Wide latitude is generally available to counsel to argue his case on closing argument. *Davis v. State*, 660 So. 2d 1228, 1245 (1995). None of these comments amount to reversible error. Concerning the prosecutor's statement about his asking juries for the death penalty, the State refuted the claim by Williams that the prosecutor attempted to mislead the jury when the State explained that the misstatement by the prosecutor was corrected in his next sentence, which Williams did not include in his brief. The correction was, "I have had *capital murders* where I did not ask for the death penalty." (emphasis added). We find no merit in this assertion.

### 5. Reference to Comments Not in Evidence

¶118. Williams contends that the prosecutor referred to facts not in evidence which in turn violated Williams' rights under the Mississippi and United States Constitutions. He cites to *Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990) (holding that prosecutor committed reversible error by referring to facts not in evidence) and *Cabello v. State*, 471 So. 2d 332, 346 (Miss. 1985) (holding that argument about facts not in evidence is impermissible). Williams claims that the prosecutor in this case committed reversible error. Once again, these are after-the-fact errors that Williams raises for the first time on appeal to this Court. The procedural bar applies.

¶119. Alternatively, procedural bar notwithstanding, we find no merit to this contention. Evans had testified that Williams had a colostomy bag strapped to his side, and in closing argument, defense counsel inferred that Williams could not have done this alone due to Williams' colostomy bag. In the prosecutor's closing argument, he addressed this contention and said that one man could do this, particularly if the girl was drunk or doing drugs "put in by herself, or in my opinion more likely put there by the animal that she was with."

¶120. The first mention of someone putting something in Karen's drink came from defense counsel in his opening argument. He said, "While at the Scoreboard Lounge that night, Karen Ann Pierce didn't drink a little bit; Karen Pierce drank a lot. Someone may have put some type of drugs in the things she was drinking, or she might have taken the drugs herself." Williams is taking the position that the defense can mention a possibility such as this when the defense is trying to show that Pierce was in an altered state and not completely innocent, but when the prosecution attempts to refute Williams' claim that he did not do this alone and does so by depicting Karen Ann Pierce's weakened condition, *then* this inference becomes reversible error. This Court has held that "if a comment is so inflammatory that the trial court should have objected on his own motion, the point may be considered." *Handley v. State,* 574 So. 2d 671, 679 (Miss. 1990); *Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1988). There was no contemporaneous objection to this statement at trial or in the motion for new trial. We would strongly recommend that prosecutors in general refrain from expressing an opinion such as this. But the comment by the prosecutor, in light of what he was refuting and in light of the fact that defense counsel had already mentioned someone else drugging Karen, was not so inflammatory as to necessitate the trial court's objecting on its own motion or to require any finding of error by this Court on appeal. This assignment is without merit.

### VII. WHETHER OR NOT THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PREVIOUS TRIAL TESTIMONY OF TWO STATE WITNESSES

**WITHOUT ADEQUATE PROOF OF THE WITNESSES' UNAVAILABILITY, WHICH VIOLATED WILLIAMS' RIGHTS TO CONFRONTATION AND DUE PROCESS.**

¶121. Ronnie Russell and Gregory Lynn Fountain were the first two witnesses presented by the State of Mississippi. They were not physically present to testify. The prosecution read into evidence the former testimony of these two witnesses as presented by them during the guilt phase of Williams' first trial conducted in December of 1983. Russell had testified that he found the body of Karen Ann Pierce on January 22, 1983, while deer hunting with his wife in a thickly wooded area of Jackson County. Fountain had testified that he was with Karen Ann Pierce as her escort on the evening of Pierce's death and that after taking her to the Tiki Lounge in Gautier for dinner, the two went to the Scoreboard Lounge. Fountain said that one man was giving Karen liquor and when he motioned for the man to stop, the man became rather belligerent. Fountain decided to leave. Karen refused to leave with him and insisted on staying at the Scoreboard. Fountain said he left at 11:00 or 11:30 p.m.

¶122. Williams objected at trial and still contends the trial court erred in admitting into evidence the former trial testimony of these two witnesses without adequate proof of their unavailability under Miss. R. Evid. 804. The State, on the other hand, contends the former testimony was admissible without the necessity of demonstrating the unavailability of the declarants.

¶123. During the sentence-determination phase of a bifurcated death penalty trial, whether before the same or a separate jury, the State should have the option of "reintroduc[ing] any part of the evidence adduced at the first hearing which it considers relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment." *Jackson v. State*, 337 So. 2d 1242, 1256 (Miss. 1977), *superceeded by statute on unrelated grounds as recognized by* **Gray v. State**, 351 So. 2d 1342, 1349 (Miss. 1977). Miss. Code Ann. § 99-19-101, states that "evidence may be presented as to any matter that the court deems relevant to sentence . . . ." The former testimony of Russell and Fountain was relevant insofar as it was a logical starting place for a new jury charged with the task of resentencing Williams to either death or to life imprisonment.

¶124. We cannot agree that Williams was denied his constitutional right to cross-examine these two witnesses because Williams was afforded that opportunity during the guilt-finding phase of his trial conducted in 1983 during which both Russell and Fountain were subjected to cross-examination by Mr. Gautier, Williams' trial attorney. Nothing new was added to the testimony in the resentencing trial. Williams himself does not claim there is anything new introduced. The mere fact that Williams' two new lawyers may have thought of some different questions to ask these witnesses is not sufficient to demonstrate a violation of the confrontation clause.

¶125. Even so, the trial judge did conduct a hearing during which the State sought to demonstrate that Russell and Fountain were unavailable as witnesses. L.H. Fountain, a criminal investigator with the office of the district attorney, testified as to the efforts made by him and others to locate these two witnesses prior to the resentencing hearing. These efforts include contacting families in the area with the same last names as the men, contacting former employers, placing the names on the National Crime Information Center computer, and contacting the former district attorney's assistant, who, while able to locate other witnesses, could not uncover these two witnesses. Their best efforts were nonproductive and the trial judge, in his discretion, allowed the testimony.

¶126. In any event, the admission of this testimony from Russell and Fountain was surely harmless beyond a

reasonable doubt under Miss. R. Evid. 103, which states, in part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Nothing testified to by Russell or Fountain was considered by the jury in aggravation of sentence. These two witnesses simply set the scene for the testimony later elicited from live witnesses. There is no merit to this issue.

### VIII. WHETHER OR NOT THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE TO INTRODUCE INTO EVIDENCE AN INDICTMENT AND COMMITMENT ORDER WHICH INCLUDED A REFERENCE TO A KNIFE.

¶127. Williams claims the trial judge committed reversible error by allowing the State to introduce into evidence duly authenticated copies of an Indictment and Commitment Order reflecting that a prior 1973 conviction of armed robbery was committed "by placing the [victim] in fear of immediate injury to his person by exhibiting a knife, a deadly weapon, or by violence to the person of the [victim] . . . ."

¶128. Miss. Code Ann. § 99-19-101(5)(b)(1994) lists the following as an aggravating circumstance: "The defendant was previously convicted of another capital offense or of a felony involving **the use or threat of violence to the person.**" (emphasis added).

¶129. As noted previously, Miss. Code Ann. § 99-19-101(1) provides that "evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances." The State was empowered by statute with the authority to demonstrate during the sentence-determining hearing that Williams' prior conviction was for a "felony involving the use or threat of violence to the person." Papers reflecting that the armed robbery was committed by Williams, who was wielding a knife, demonstrate to the jury beyond a reasonable doubt that Williams' crime of armed robbery involved either the use of violence or threat of violence to the person.

¶130. In this situation, the State was not using the details, if any, of the prior felony conviction to impeach the defendant's credibility. Rather, the State was engaged in the process of presenting evidence relevant to sentence, including matters demonstrating, beyond a reasonable doubt, to the finder of fact that Williams' prior felony conviction involved "the use or threat of violence to the person." There is no merit to this issue.

### IX. WHETHER OR NOT THE JURY'S VERDICT FAILED TO COMPORT WITH MISS. CODE ANN. § 99-19-101 AND § 99-19-103.

¶131. Williams claims that the jury verdict failed to comply with the findings required by Miss. Code Ann. §§ 99-19-101 and 103. Specifically, Williams argues **(1)** that the verdict returned did not specifically state that the jury found the aggravating circumstances unanimously and **(2)** the verdict did not specifically state that the jury found the aggravating circumstances beyond a reasonable doubt.

#### A. Unanimous Finding of Aggravating Circumstances

¶132. Sentencing Instruction 2 clearly informed the jury that in order to return the death penalty it had to find any aggravating circumstances "unanimously" and "beyond a reasonable doubt." The written findings of the jury assert, inter alia, the following:

Next, we the jury **unanimously find** that the aggravating circumstances of:

1. The defendant was previously convicted of a felony involving the threat of violence to the person.

2. The capital offense was committed while the defendant was engaged in the commission of kidnaping.

3. The capital offense was especially heinous, atrocious and cruel.

are sufficient to impose the death penalty & that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find the defendant should suffer death. (emphasis added).

Obviously, the first half of the complaint made by Williams is devoid of merit.

### B. Finding of Aggravators Beyond a Reasonable Doubt

¶133. It is true that the written verdict of the jury does not specifically state that it found the three aggravating circumstances unanimously and beyond a reasonable doubt. While there is a statutory requirement that the jury find the existence of each aggravating circumstance beyond a reasonable doubt, there is no authority for the proposition that the jury must actually write the words "beyond a reasonable doubt" in its verdict. Miss. Code Ann. § 99-19-103 states in pertinent part: "The jury, if its verdict be a unanimous recommendation of death, shall designate in writing, signed by the foreman of the jury, the statutory aggravating circumstance or circumstances which it unanimously found beyond a reasonable doubt." Upon reading the statute in a creative manner, one can see the technical path which Williams took to arrive at the conclusion that the words "beyond a reasonable doubt" must be written adjacent to the aggravators. However, this interpretation would not prevail in an English teacher's classroom, nor will it prevail at this Court.

¶134. Instruction S-2 instructed the jury, in plain English, that "[y]ou must unanimously find, **beyond a reasonable doubt** that one or more of the preceding aggravating circumstances exists in this case to return the death penalty." The same instruction later instructed the jury as to the possible form(s) of the verdict. One of the forms stated:

Next, we the Jury, unanimously find that the aggravating circumstance(s) of: (List or itemize all of aggravating circumstance(s) presented in section B of this instruction which you unanimously agree exist in this case **beyond a reasonable doubt**.) (emphasis added).

¶135. This Court has held on numerous occasions that when a trial court instructs the jury, it is presumed the jurors follow the instructions of the court. *See* **Crenshaw v. State**, 520 So. 2d 131 (Miss. 1988); **McFee v. State**, 511 So. 2d 130 (Miss. 1987); **Johnson v. State**, 475 So. 2d 1136 (Miss. 1985).

¶136. Stated differently, courts assume that juries follow the instructions. *Johnson v. State*, 475 So. 2d 1136, 1141 (Miss. 1985). "Our law presumes the jury does as it is told." **Williams v. State**, 512 So. 2d 666, 671 (Miss. 1987)(citations omitted). "To presume otherwise would be to render the jury system inoperable." **Johnson**, 475 So. 2d at 1142.

¶137. This Court must presume the jury did as it was instructed to do and that it found the existence of each of the three aggravating circumstances "beyond a reasonable doubt." This Court agrees with the analogy made by the State concerning jury verdicts in cases less than capital. In such cases, the jury is

instructed in writing they must find the defendant guilty of the crime charged beyond a reasonable doubt. The usual written verdict, however, reads as follows: "We, the jury, find the defendant guilty as charged." There is no statutory or constitutional requirement for the jury to include in its verdict the words "beyond a reasonable doubt."

¶138. Williams' reliance upon **Pinkton v. State**, 481 So. 2d 306 (Miss. 1985), is misplaced. In **Pinkton** there was a total absence of a written finding of the intent factors required by Miss. Code Ann. § 99-19-101(7). The statute clearly stated that the jury "must" make a written finding that one or more of these circumstances existed before imposing the death sentence. No such finding was made. **Pinkton** is not viable authority for the "beyond a reasonable doubt" argument presented here.

¶139. When all of the jury instructions given by the court are read in harmony with the written verdict returned by the jury, it is clear the verdict of the jury resentencing Williams to death complies with the requirements of Miss. Code Ann. § 99-19-101 and Miss. Code Ann. § 99-19-103.

## PROPORTIONALITY REVIEW

¶140. In accordance with the mandate of Miss. Code Ann. §99-19-105(3)(c), this Court "shall determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Where the sentence is found to be disproportionate, this Court may "set the sentence aside and remand the case for modification of the sentence to imprisonment for life." Miss. Code Ann. §99-19-105(5)(b).

¶141. The case of *Woodward v. State*, 533 So.2d 418 (Miss.1988), *cert. denied,* 490 U.S. 1028 (1989), *vacated in part on other grounds,* 635 So. 2d 805 (Miss. 1993), provides sufficiently similar facts upon which a proper comparison of sentences may be made. Woodward was convicted of capital murder in the commission of rape, kidnaping and sexual battery. Woodward was convicted on all counts; he was sentenced to thirty (30) years for kidnaping, thirty (30) years for sexual battery, said sentences to run consecutively; and to death for the capital murder. The facts showed that Woodward was a male employed as a logging truck driver. While en route to the timber company where he worked, Woodward stopped his log truck across the middle of a highway, forcing twenty-four year old Rhonda Crane, his ultimate victim, to stop her car. Woodward forced Crane out of her vehicle and into his truck at gunpoint. He drove Crane into the woods to a desolate spot where she was forcibly raped and forced to perform oral sex. Woodward then murdered Rhonda Crane with a single bullet to the back of the head.

¶142. This Court considered the punishment imposed in Woodward's case as compared to other death penalty cases and determined Woodward's death sentence was "proportionate to the penalty imposed in similar cases, considering the defendant and the sentence." *Id.* at 435.

¶143. Factually, Williams' actions appear more barbaric in nature. The depravity he exhibited exceeds that of Woodward. Williams mutilated Karen Ann Pierce's body by excising her vagina and anus while she was still alive. The doctor testified that she bled to death from those wounds. Williams stabbed her over thirty times and knifed her in the heart. Testimony from two witnesses indicated that Williams was enthralled by such butchering, that he smiled immediately afterwards and joked about it days later. Williams did not argue the issue of proportionality at all.

¶144. We hold that after consideration of the accused and his crime and sentence in this case, as compared

to *Woodward* and other death penalty cases, indicates the death penalty is proportionate.

¶145. This Court declines to remand Williams' case for a third sentencing hearing. We affirm the resentencing jury's decision that Williams should suffer death for the capital murder of Karen Ann Pierce.

¶146. **SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) AND M.R.A.P. 41 (a).**

**PRATHER, P.J., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND SULLIVAN, P.J. McRAE, J., NOT PARTICIPATING.**

**BANKS, JUSTICE, CONCURRING:**

¶147. I concur in the result reached by the majority but not all that is said. I write to particularly note that my concurrence with respect to Instruction S-2 is based upon the procedural bar rather than the majority's alternative analysis.

¶148. Our statutory scheme does not require a unanimous finding as to mitigating circumstances and the Constitution of the United States prohibits such a requirement. ***Mills v. Maryland***, 486 U.S. 367 (1988). The best that can be said about Instruction S-2 is that it is unclear. In my view, it plainly implies a requirement of unanimity. Williams failed to object, however, and offered instructions on his own behalf which were worded similarly. It follows that he is barred from claiming the error here. In my view, however, it would better serve the bench and bar to express our disapproval of instructions such as this.

**LEE, C.J., AND SULLIVAN, P.J., JOIN THIS OPINION.**

1. Her name is spelled both as "Karon" and "Karen" throughout the various documents and the trial transcript.